I dissent. Inasmuch as courts may not be divested by statute of their jurisdiction conferred by the state constitution to issue writs of habeas corpus, the superior court of Walla Walla county is not proceeding in excess of its jurisdiction.
I agree with the view of the majority that the petitioner can proceed under the act of 1907 [Laws of 1907, p. 33]. It does not follow, however, that she is thereby precluded from resorting to habeas corpus proceedings for her discharge, and that the statutory judicial proceeding is her exclusive remedy.
If the legislature purposed, by the act of 1907, to take away from the superior courts, other than the committing court, the common law power exercisable by the use of the writ of habeas corpus, it exceeded its authority. Our superior courts take their power to issue writs of habeas corpus from the constitution, not from the legislature. Only to that instrument do the superior courts look for the exercise of their authority, the same as the legislature must do for limitations upon its powers. *Page 349 
Section 6, Art. IV of the state constitution, defining the jurisdiction of the superior courts, provides that such courts
". . . shall always be open, except on nonjudicial days, . . . and shall have power to issue . . . writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties."
This is a self-executing provision of the constitution, not within the power of the legislature to modify or destroy. That provision is analogous to the provision in state constitutions defining the amount (area or value) of land constituting a homestead, and expressly exempting the same from any forced sale. All legislation respecting such right must be subordinate to the constitutional provision and in furtherance of its purpose, and must not, in any particular, attempt to narrow the right.
"The provision of a constitution which defines a homestead and exempts it from forced sale is self-executing, at least to this extent, that, though it may admit of supplementary legislation in particulars where in itself it is not as complete as may be desirable, it will override and nullify whatever legislation, either prior or subsequent, would defeat or limit the homestead which is thus defined and secured." Cooley's Constitutional Limitations (7th ed.), p. 122.
The legislature may pass acts regulatory of the procedure for obtaining a writ of habeas corpus, but it cannot deny to the court of the county in which the petitioner is in custody the right to inquire into the cause of the custody.
"The state constitutions recognize the writ of habeas corpus as an existing remedy in the cases to which it is properly applicable, and designate the courts or officers which may issue it; but they did not point out the cases in which it may be employed. Upon *Page 350 
this subject the common law and the statutes must be our guide; and although the statutes will be found to make specific provision for particular cases, it is believed that in no instance which has fallen under our observation has there been any intention to restrict the remedy, and make it less broad and effectual than it was at the common law." Cooley's Constitutional Limitations (7th ed.), p. 494.
The constitution does not define a writ of habeas corpus. The term is used in its generic sense. It meant that it was to be applied in accordance with immemorial usage. In other words, it meant that this was one of the rights that was to be reserved to the people, untrammeled and unhampered by the legislature, and to preserve the right was the very purpose of its incorporation in the constitution. A person unlawfully in custody in the state penitentiary is just as illegally in custody as he would be were he in custody at some other place, or in the custody of some person. It is not, therefore, within the power of the legislature to say that some court, other than the court the constitution prescribes, shall have sole authority to inquire into the cause of the custody. Possibly it may confer the power upon some other court, but it cannot make that authority exclusive.
Nor can the legislature say that the right to sue out the writ shall be subject to the will of the person who has the custody of the person who seeks the writ. When, therefore, the legislature said that the right to the writ should depend upon the certificate of the physician in charge of the criminally insane at the penitentiary, and should depend upon the fact whether the warden of the penitentiary gave his consent to the writ, the legislature exceeded its powers. Since the constitution gives to the superior court power to issue writs, any act of the legislature which deprives the superior court of that right, or hampers the superior *Page 351 
court in the exercise of the right, must be of necessity a violation of the constitution.
The constitution of Wyoming (art. V, §§ 3 and 10), provides that the supreme court of that state shall have original jurisdiction in habeas corpus; that each of the judges of the supreme court shall have power to issue writs of habeas corpus, and in any part of the state, upon petition by or on behalf of a person held in actual custody; and that district courts and district court judges have power to issue writs of habeas corpus on petition by or on behalf of any person in actual custody in their respective districts.
In Byers v. Solier, 16 Wyo. 232, 93 P. 59, a petition for habeas corpus was presented to the chief justice of the supreme court on behalf of Byers, alleged to be unlawfully restrained of his liberty at the state hospital for the insane by Dr. Solier, superintendent of that institution. A similar application was denied by the district judge in whose district the hospital was located. It was contended by the superintendent of the hospital that, when one who had been lawfully committed to the state hospital for the insane claimed to have been restored to his right mind, or to have recovered sufficiently to authorize his release, his remedy was not habeas corpus, but by application for an inquiry into the facts before the court or judge before whom the proceedings were had resulting in the original commitment, pursuant to the provisions of §§ 4894 and 4895, Revised Statutes of 1899.
It appears that the district judge denied the writ upon the petition presented to him on the ground that the proceeding authorized by §§ 4894 and 4895, Rev. Stat. 1899, afforded a sufficient remedy, and that the restoration to his right mind of a legally committed inmate of the insane asylum was not therefore a matter *Page 352 
that should be determined on habeas corpus. The sections referred to read as follows:
"Section 4894. If any person shall allege in writing, verified by oath or affirmation, that any person declared to be of unsound mind has been restored to his right mind, the court or judge by which the proceedings were had shall cause the facts to be inquired into by a jury: Provided, that, before such matter shall be submitted to a jury, it shall be the duty of the court to ascertain and determine whether the proceeding mentioned in this section is instituted and prosecuted in the interest of the person so declared to be of unsound mind; and, if found not to be so instituted and prosecuted, the court shall dismiss said proceeding at the cost of the person instituting the same; but if found to be in the interest of the person declared to be of unsound mind, the said matter shall be submitted to a jury, as in this chapter provided. In ascertaining and determining the interest as aforesaid, the court shall have power to examine under oath any and all persons, including the person declared to be of unsound mind.
"Section 4895. The court shall cause notice of the trial to be given to the guardian of the person so declared insane or incompetent, if there be a guardian, and to his or her husband or wife, if there be one, or to his or her father or mother, if living in the county. On the trial, the guardian or relative of the person so declared insane or incompetent, and, in the discretion of the court, any other person, may contest the right to the relief demanded. Witnesses may be required to appear and testify as in civil cases, and may be called and examined by the court on its own motion. If it be found that the person be of sound mind, and capable of taking care of himself and his property, his restoration to capacity shall be adjudged, and the guardianship of such person, if such person be not a minor, shall cease."
The court stated that the effect of §§ 4894 and 4895 in relation to the right to the writ was presented and considered at the preliminary hearing, and that the *Page 353 
question was again raised by the answer and return of the defendant, Solier. Notwithstanding the statutory proceedings thus provided for, the supreme court concluded that the writ might be issued. The court said:
"Indeed, § 4895 seems to imply that the party whose restoration to capacity is sought may be without a guardian. Whether the proceedings may be instituted for the further purpose of procuring by judicial order a release from the insane hospital, or from any other restraint, is a more serious question, and we think may be subject to some doubt. We are of the opinion, however, that it is unnecessary to decide that question in this case. Our comments in relation to the matter have been for the purpose of suggesting to those interested the unsatisfactory, if not doubtful condition of our statutes regarding the remedy for the discharge upon recovery of one committed to the hospital for the insane, since it is a subject that can be and clearly ought to be regulated by legislative enactment, within reasonable constitutional restrictions. If it should be conceded that the legality of the confinement of a party in the asylum, whose sanity or soundness of mind is alleged, may be determined in the aforesaid statutory proceeding, and his release enforced thereby, we are of the opinion, nevertheless, that the courts and the judges thereof are not divested by the statute of their jurisdiction conferred by the constitution to issue writs of habeas corpus on petition by or on behalf of any person in actual custody. Const., Art. V, §§ 3, 10. Moreover, we observe nothing in the statute in question to indicate a legislative attempt to interfere with that jurisdiction. If the statute had clearly authorized an order for a party's release from custody by the proceeding provided for, it might, perhaps, have afforded a sufficient reason for requiring a resort to it before the issuance of a writ of habeas corpus; though in such event we are satisfied that the power would exist to issue the writ and determine the legality of the restraint without compelling a resort in the first instance to the statutory proceeding." *Page 354 
The constitution of Maryland provides that all judges shall be conservators of the peace throughout the state, and that the legislature shall pass no law suspending the privilege of the writ of habeas corpus. Under that provision, it was held inState v. Glenn, 54 Md. 572, that a legislative attempt to limit the jurisdiction of the circuit court in habeas corpus proceedings to persons confined within their circuit was nugatory, and that a judge of such court had jurisdiction to issue a writ of habeas corpus though it was directed against a person outside of his circuit.
In People ex rel. Patrick v. Frost, 133 N.Y. App. Div. 179,117 N.Y. Supp. 524, it was held that the provision of the statute providing that the application for the writ of habeas corpus may be made to the appellate division of the supreme court only "where the person is detained within the judicial district within which the term is held," was void as being beyond the power of the legislature to enact. The court said:
"A point in the case, but not raised by the parties, may be noticed. The application for the writ was made in vacation to Mr. Justice Gaynor, who made it returnable before this court, of which he is a member. With reference to the supreme court the Code of Civil Procedure (Sec. 2017) provides that the application for the writ must be made to either `a justice of the supreme court, in any part of the state,' or `the supreme court at a special term or the appellate division thereof, where the prisoner is detained within the judicial district within which the term is held.' This term of this court is not held within the judicial district where the prisoner is detained. But the writ of habeas corpus at common law is beyond legislative limitation or impairment, and it is declared that every court and officer having power to grant the writ and to pass upon the legality of an imprisonment, `has and may exercise, in the forms prescribed by law, all the power exercised at common law by the court of king's bench in England, and the supreme court of this state, as the corresponding *Page 355 
tribunal with us.' (People ex rel. Tweed v. Liscomb, 60 N.Y. 567. ) In Ex parte Clark (100 U.S. 399) it is said that it was the practice of the English judges in cases of consequence or difficulty to postpone the case for the whole court, and that under the habeas corpus act it was the regular course to take bail and to require the party to appear in the king's bench or assizes, though the judge would discharge absolutely if the case were one of illegal imprisonment, citing authorities. (See, too, 3 Black Comm. 132.) Church on Habeas Corpus says (2nd ed., p. 70): `At one period it was thought that the writ of habeas corpusad subjiciendum — which was only for matters of crime — could issue out of the king's bench only in term time; but Watson's
case (9 Ad. El. 731) settled it that the king's bench, or a judge thereof, might grant the writ, at common law, in vacation, and that it might be made returnable immediately either before the court or before a judge at chambers.' In People v. McLeod
(1 Hill 377), Cowen, J., made the writ returnable before the court. The supreme court in all of its divisions is but one court, and its appellate division has all the powers and general jurisdiction thereof, except when limited by law [citing cases]. The limitation upon its jurisdiction in habeas corpus is beyond the legislative control."
The act of 1907, as construed by the relator, also violates another provision of the constitution. By § 4, Art. IV of that instrument, the supreme court and each of the judges thereof are vested with power to issue writs of habeas corpus:
"The supreme court shall also have power to issue writs of . .. habeas corpus, . . . Each of the judges shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself, or before the supreme court, or before any superior court in the state, or any judge thereof."
These rights are denied the person in illegal custody *Page 356 
if this act of the legislature is construed to prescribe that the authority to inquire into the cause of the custody shall vest exclusively in the committing court.
The authority conferred by the constitution upon the courts to issue writs of habeas corpus can not be restricted by statute. The act of 1907, in attempting to grant to the committing court exclusive jurisdiction to issue writs of habeas corpus, is an invasion of the constitutional authority of the courts. It follows that the act of 1907 did not in any way affect the jurisdiction of the superior court for Walla Walla county to inquire into the sanity of the petitioner.
The application for the writ should be denied and the alternative writ quashed.
FULLERTON, J., concurs with MILLARD, J.